**SIGNED THIS: May 01, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | No. 05-87521 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| 1ST FARM CREDIT SERVICES, PCA and | ) | |
| 1ST FARM CREDIT SERVICES, FLCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 06-8069 |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

Before the Court are the cross-motions for summary judgment filed individually by KIM E. PHILLIPS (KIM) and MARY M. PHILLIPS (MARY), the Debtors (jointly referred to as "DEBTORS") and, the Plaintiff, 1st Farm Credit Services, PCA and 1st Farm Credit Services, FLCA (FARM CREDIT). The Complaint consists of two counts and seeks a

determination that the debts owing FARM CREDIT are nondischargeable pursuant to Section 523(a)(2)(B) of the Bankruptcy Code. For the following reasons, the Court concludes that neither motion may be granted because there remain material facts in dispute.

**Background**

The DEBTORS were married in 1986. MARY holds a Masters degree in business and has worked for Western Illinois University for twenty years. After farming with his father-in-law for a number of years, KIM began farming on his own. The DEBTORS had an established lending relationship with FARM CREDIT. Between December, 2002 and November, 2005, KIM tendered four financial statements to FARM CREDIT. During that same time frame, FARM CREDIT made the following loans to the DEBTORS:

| DATE | AMOUNT |
|---|---|
| January 2, 2004 | $ 38,000 |
| March 17, 2004 | 20,000 |
| February 8, 2005 | 250,000 |
| February 8, 2005 | 115,000 |
| June 20, 2005 | 25,000 |
| June 28, 2005 | 20,000 |

In May, 2004, the DEBTORS decided to incorporate the farming operation, forming Phillips Farms, Inc.

The DEBTORS filed a voluntary petition under Chapter 12 of the Bankruptcy Code on November 18, 2005.[1] The DEBTORS scheduled secured debt in the amount of

---

[1] On September 23, 2005, Phillips Farms, Inc., filed a Chapter 12 petition. The case was dismissed on November 16, 2005, with the consent of the Debtor, on the motion of FARM CREDIT brought pursuant to Section 109(f). On March 1, 2006, Phillips Farms, Inc., filed a Chapter 7 petition. The Chapter 7 Trustee received $3,000 from the sale of a truck titled in the debtor/corporation's name and has abandoned all other assets except for the right to exercise his avoidance powers. While the schedules filed by the debtor/corporation list other property, the Debtor explains that the property belongs to the DEBTORS and is properly scheduled in their individual case because the debtor/corporation was not properly established.

2

$1,657,709.63 and unsecured debt of $787,611.08.[2] The DEBTORS valued their real estate at $228,000.00 and their personal property, consisting primarily of livestock, stored grain and farm equipment at $891,192.60. The schedules show total assets of $1.1 million, total liabilities of $2.4 million and a negative net worth of $1.3 million.

FARM CREDIT filed an adversary proceeding against both KIM and MARY, seeking a determination of nondischargeability pursuant to Section 523(a)(2)(B). The financial statements that are the subject of this Complaint are dated November 13, 2003 and December 28, 2004. In its Complaint, FARM CREDIT alleges that it made two loans in reliance on the November 13, 2003 financial statement and three loans in reliance on the December 28, 2004 financial statement. Both KIM and MARY filed motions for summary judgment.[3] FARM CREDIT filed a cross-motion for summary judgment.

**STANDARDS FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine

---

[2] The DEBTORS later amended Schedule D to add $52,500, representing landlords' liens on crops for cash rent.

[3] The motions for summary judgment filed by KIM and MARY which are before the Court are the amended motions filed on February 13, 2007.

3

issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

When each side seeks summary judgment, that does not by itself indicate that there are no genuine issues of material fact. *In re Schreiber*, 163 B.R. 327, 331 (Bankr.N.D.Ill. 1994). While the court must ordinarily rule on each motion separately in determining whether or not each judgment should be entered, where both sides are proceeding on the same legal theory, it is likely that the material facts will not shift as the court considers each motion. *In re Sturman*, 222 B.R. 694 (Bankr.S.D.N.Y. 1998). When both parties are proceeding on the same legal theory, the court's task of ensuring that the non-moving party gets the benefit of having all inferences drawn in its favor is diminished, although not eliminated. *In re Crystal Apparel, Inc.*, 220 B.R. 816 (Bankr.S.D.N.Y. 1998). Where genuine issues of material fact exist, summary judgment is not appropriate for either party. *In re TennOhio Transp. Co.*, 247 B.R. 715 (Bankr.S.D.Ohio 2000).

A creditor seeking to except a debt from discharge bears the burden of proof. *In re Scarlata*, 979 F.2d 521 (7th Cir. 1992). The creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order to afford the debtor a "fresh start," exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994).

Section 523(a)(2)(B) provides that an individual debtor is not discharged from any debt obtained by:

> (B) use of a statement in writing—
>
> (i)   that is materially false;
> (ii)  respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv)  that the debtor caused to be made or published with intent to deceive; . . . .

In order for a loan obtained by a false financial statement to be nondischargeable, a creditor must establish each of the following five elements: (1) the debtor made a statement in writing; (2) the statement is materially false; (3) the statement concerns the debtor's financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor reasonably relied on the misrepresentation. *Matter of Sheridan*, 57 F.3d 627 (7th Cir. 1995).

In order for KIM and MARY to prevail on their motions, the Court must find, as to each of them, considering all the facts in a light most favorable to FARM CREDIT, with respect to both financial statements, at least one of the following: that the statement was not a "statement in writing" within the meaning of the statute; that the statement was not materially false; that it was not made with the intent to deceive; or that FARM CREDIT did

not reasonably rely upon the statement in making each of the loans. Conversely, for FARM CREDIT to prevail on its cross-motion, the Court must find, considering all the facts in a light most favorable to the DEBTORS, that FARM CREDIT has established that there is no materially disputed fact that each DEBTOR made use of or gave FARM CREDIT a written financial statement that was materially false, with the intent to deceive FARM CREDIT and that FARM CREDIT reasonably relied on that statement. The financial statements submitted to FARM CREDIT are indisputably statements concerning the DEBTORS' financial condition. That is, however, the only element that is not in dispute.

Each movant asserts that there are no genuine issues of material fact and that each motion could be decided as a matter of law. Because FARM CREDIT, by cross-motion, seeks summary judgment against the DEBTORS on precisely the same grounds that it opposes their motions and both the DEBTORS and FARM CREDIT present few facts that the other does not dispute or deem immaterial, it is with little difficulty that the Court determines that summary judgment is not appropriate in this proceeding. The statements of undisputed facts filed by MARY and KIM are identical. In addition, they have submitted various Loan Narratives prepared by FARM CREDIT, their 2004 examination transcript, a letter dated March 14, 2005 to KIM from FARM CREDIT, and documents showing corporate ownership. FARM CREDIT filed both a response to the DEBTORS' statement of undisputed facts, contradicting all but six of the DEBTORS' twenty-three factual statements and a counter-statement of undisputed facts. In support of its cross-motion, FARM CREDIT also relies on the transcript of the DEBTORS' 2004 exam as well as the affidavits of two of its officers, Mark Troline, a Risk Assets Credit Officer, and Garry Ackers, a Vice President and loan officer for over twenty-one years.

A comparison of the DEBTORS' statement of undisputed facts, FARM CREDIT'S response and counter-statement, and KIM'S response thereto, discloses the presence of genuine issues of material fact which are outcome determinative. As discussed below, resolution of FARM CREDIT'S claims against the DEBTORS cannot be made on summary judgment. First, the parties disagree on MARY'S role in the farming operation and the part she played in submitting the financial statements and obtaining the loans from FARM CREDIT. Second, the parties strongly disagree on the events surrounding both the preparation, the review and the execution of the financial statements. In addition, the Court determines that there are legitimate factual issues on the ultimate issues of intent to deceive and reasonable reliance. The Court will need to weigh the evidence and the credibility of the witnesses in order to determine which, if any, of the debts are nondischargeable, as to either, or both, of the DEBTORS.

*1. Statement in Writing*

In her motion for summary judgment, MARY focuses upon the threshold element of Section 523(a)(2)(B), asserting that she neither signed the November 13, 2003 financial statement or the December, 2004 financial statement, nor did she authorize KIM to sign either of them on her behalf. KIM claims to have signed her name to the November 13, 2003 financial statement in the presence of FARM CREDIT employees, with their acquiescence. KIM also claims to have signed her name, without her knowledge, to the December, 2004 financial statement. MARY claims, as she testified at her 2004 examination, that she had no involvement in the farming operation and that she did not do the bookkeeping for the farm. Based on the joint ownership of the farmland, MARY'S

7

signature on all of the loan documents over an extended period of time, her role as owner and officer of Phillips Farms Inc., and her advanced business degree, FARM CREDIT disputes MARY'S claims of innocence and detachment. In his affidavit, Garry Ackers states that MARY had, on occasion, delivered documents to FARM CREDIT and had come to the office to make loan payments. He also denied that he knew that KIM signed MARY'S name to the November 13, 2003 financial statement.

A financial statement need not be signed by the debtor in order to satisfy the threshold element of the requirement of a writing, but if the document is written by another, it must have been adopted or used by the debtor. *In re Kaspar*, 125 F.3d 1358 (10th Cir. 1997). As explained by Judge Lessen in *In re Hammitt*, 289 B.R.681 (Bankr.C.D.Ill. 2001), in rejecting the debtor/wife's argument that the bank could not prevail on its claim of nondischargeability under Section 523(a)(2)(B) because she did not sign the financial statement:

> While there is no requirement under Section 523(a)(2)(B) that the debtor sign the financial statement, the debtor must affirm the writing in some respect, as by using or adopting it. *In re Eckert,* 221 B.R. 40, 44 (Bankr.S.D.Fla. 1998). In this case, the financial statement purports to be the financial statement of both "Randy and Trish Hammitt." Both of their 401(k) plans are listed on the statement. The financial statement was signed by Randy Hammitt, Mrs. Hammitt's husband and partner or joint venturer in the cattle operation, and Mrs. Hammitt knew that a financial statement was required in connection with the refinancing in 1997. Mrs. Hammitt never told the Bank that Randy did not have the authority to sign the financial statement on behalf of both of them. Under these circumstances, the Court finds that Mrs. Hammitt "published" the financial statement by allowing her husband to sign it and submit it to [the bank].

289 B.R. at 688. Although the debtor/wife in *Hammitt* took care of the books, this Court does not view actual participation by MARY in the farming operation as determinative.

8

As in *Hammitt*, MARY'S retirement account was included on the November 13, 2003 financial statement.[4]  On their face, the financial statements purport to include all of the assets and liabilities of both KIM and MARY, whether personal or related to the farming operation.

KIM does not contest that the financial statement dated November 13, 2003, constitutes a written statement concerning his financial condition.  As to the financial statement dated December, 2004, KIM contends that the requirement of a statement in writing cannot be satisfied.  It is not disputed that KIM did not sign the December financial statement until March, 2005.   KIM contends that there is no evidence that he adopted or made use of the financial statements prior to the making of the February loans.  It is disputed whether KIM prepared the financial statement or whether it was prepared by Garry Ackers.  Contending that he did not prepare the financial statement, KIM concludes that if FARM CREDIT prepared it by using his oral responses, the requirement of a writing is not satisfied.  KIM is incorrect.  Just because the financial statement is completed by another, does not mean that the debtor can escape liability.  *In re Michael*, 265 B.R. 593 (Bankr.W.D.Tenn. 2001). Rather, the issue, as noted above, is whether KIM had "adopted" the financial statement.  According to the affidavit of Garry Ackers, the DEBTORS were in a hurry and provided the necessary financial information, but neglected to sign the December, 2004 financial statement.

---

[4]According to Schedule B filed by the DEBTORS, MARY'S retirement account with the state university system was valued at $75,207.48 and her IRA was listed at $1,500.  Two IRA accounts were listed for KIM, having values of $3,000 and $4,402.10.  The November 13, 2003 balance sheet listed retirement accounts at $90,000.  The December, 2004 financial statement listed retirement accounts at $165,000.

### 2. *Materially False Statement*

A financial statement is materially false if it "paints a substantially untruthful picture . . . by representing information of the type which would normally affect the decision to grant credit" or if the lender would not have made the loan "but for" the debtor's misrepresentations. *In re Morris*, 230 B.R. 352 (Bankr.N.D.Ill. 1999), *aff'd* 240 B.R. 553 (N.D.Ill. 1999), *aff'd* 223 F.3d 548 (7th Cir. 2000). Misconstruing his burden on summary judgment, KIM points to FARM CREDIT'S failure to specifically identify the falsehoods in the financial statements, apparently referencing the allegations made by FARM CREDIT in its complaint. In its response, FARM CREDIT asserts that the financial statements were materially false because they failed to disclose operating loans owing to Colchester State Bank and State Bank of Augusta. Both the November 13, 2003 financial statement and the December, 2004 financial statement disclosed only a long-term liability owing to Colchester State Bank. Neither statement listed any debts owing State Bank of Augusta.

Mark Troline, employed by FARM CREDIT as a Risk Assets and Credit Officer, prepared a chart comparing the liabilities disclosed by the DEBTORS on financial statements submitted to various lenders during the same time frame the loans at issue here were made by FARM CREDIT. Financial statements submitted to the State Bank of Augusta listed operating loans being owed to that lender of $158,000 in February, 2003; $177,303 in May, 2004; and $210,000 in March, 2005. Financial statements submitted to Colchester State Bank listed operating loans being owed to that lender of $390,000 in December, 2002; $250,000 in March, 2004; and $250,000 in March, 2005. According to Troline, on the date of bankruptcy, the balance due State Bank of Augusta on its operating loans was $310,000 and the balance due Colchester State Bank on its operating loans was $838,000.

In reply, KIM does not deny that the operating loans were omitted from the financial statements. While FARM CREDIT has not established the exact amounts owing on those loans when the DEBTORS submitted the financial statements in November, 2003, and December, 2004, it is clear that the omissions of those debts rendered the financial statements incorrect. Whether those omissions caused the financial statements to be materially false is a question of fact which remains for trial.

### 3. *Intent to Deceive*

Because a debtor will rarely, if ever, admit to an intent to deceive, proving this element is often the most difficult element for the creditor to prove. In the Seventh Circuit, in addition to direct evidence of an intent to deceive, an intent to deceive may be proved through circumstantial evidence and may also be inferred from a false representation that the debtor knows or should know will induce another to make a loan. *Matter of Sheridan*, 57 F.3d 627 (7th Cir. 1995). An intent to deceive may be inferred if (1) the statement is materially false; (2) the debtor knew his statement was false or was reckless in making the false statement; and (3) knew or should have known that the lender would be induced to make the loan as a result of the materially false statement. *In re Martin*, 306 B.R. 591, 605-06 (C.D.Ill. 2004). Among the factors to be considered are "whether the debtor was intelligent and experienced in financial matters, and whether there was a clear pattern of purposeful conduct." *In re McCleary*, 284 B.R. 876 (Bankr.N.D.Iowa 2002).

Both MARY and KIM deny that they intended to deceive FARM CREDIT. KIM claims that he had no role in preparing the financial statements and that FARM CREDIT presented them to him for his signature without asking him to review them. In addition,

he claims that he had no idea as to the values of assets and that it was FARM CREDIT that made those determination. Based on this established pattern, KIM attempts to shift the responsibility for assuring that the financial statement was accurate and complete to FARM CREDIT and to insulate himself from any errors or omissions.

FARM CREDIT vigorously disputes KIM'S representation that he played no role in preparing the financial statements. FARM CREDIT, relying on the financial statements submitted to other lending institutions, contends that the DEBTORS engaged in a fraudulent scheme, obtaining operating funds from different lenders on an annual basis without disclosing any outstanding balances on operating loans due other lenders. According to FARM CREDIT, when the DEBTORS sought operating funds from it, they failed to disclose outstanding operating loans to Colchester Sate Bank and State Bank of Augusta. When they sought operating loans from Colchester State Bank, they did not disclose the balances owed FARM CREDIT and State Bank of Augusta. Finally, financial statements submitted to State Bank of Augusta failed to disclose outstanding balances owed to Colchester State Bank and FARM CREDIT.

Issues of intent can rarely be resolved by summary judgment. *In re Canyon Systems Corp.*, 343 B.R. 615 (Bankr.S.D.Ohio 2006). The question of intent to deceive is intensely one of fact, making the debtor's credibility a very important factor. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975). While the Court finds that FARM CREDIT has raised a strong inference of intent to deceive, this issue cannot be determined in FARM CREDIT'S favor on a motion for summary judgment. At trial, the Court will have the opportunity to evaluate the

DEBTORS' credibility and determine whether their statements of honest intent should be accepted as true. [5]

### 4. Reasonable Reliance

The element of reasonable reliance calls for a twofold inquiry. The creditor must establish that it actually relied upon the financial statement and that its reliance was reasonable. *Mayer v. Spanel Intern. Ltd.*, 51 F.3d 670 (7th Cir. 1995); *In re Kreps*, 700 F.2d 372 (7th Cir. 1983). The reasonableness of a creditor's reliance should be determined on a case by case basis, in light of the totality of the circumstances. *Matter of Bonnett*, 895 F.2d 1155 (7th Cir. 1990); *Matter of Harasymiw*, 895 F.2d 1170 (7th Cir. 1990). Even partial reliance, established when the lender demonstrates that the false financial statement was a substantial factor in granting the loan, may suffice. *In re Capelli*, 261 B.R. 81 (Bankr.D.Conn. 2001); *In re Scarpinito*, 196 B.R. 257 (Bankr.E.D.N.Y. 1996). The following three factors are appropriately considered in assessing whether a creditor's reliance was reasonable:

> 1. The creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices);
>
> 2. The standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and
>
> 3. The surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information

---

[5]This is presuming, of course, that FARM CREDIT establishes the threshold requirement of a "statement in writing" with respect to both DEBTORS and both financial statements. The Court notes that most of the financial statements submitted to other lenders appear not to have been signed by MARY. Her degree of participation, if any, in such a scheme, would also present a question of fact.

>is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*In re Cohn*, 54 F.3d 1108, 1117 (3d Cir. 1995). Where the debtor and the creditor have an ongoing relationship which has given rise to a relationship of trust, a creditor's reliance may be deemed reasonable without additional verification. *Matter of Bogstad*, 779 F.2d 370 (7th Cir. 1985); *In re Watson*, 2003 WL 21241702 (10th Cir.BAP 2003). But a creditor, confronted with obvious errors or glaring inconsistencies, must inquire further or its reliance will be unreasonable. *Bogstad,* 779 F.2d at 372 n.4. Where the creditor has in its possession a prior financial statement that contradicts the financial statement at issue, a red flag is raised so that if the creditor does not take reasonable steps to obtain further information to reconcile the inconsistency, the reasonableness of its reliance is brought into question. *In re Turner,* 358 B.R. 422 (Bankr.N.D.Okla. 2006).

KIM claims that FARM CREDIT did not actually rely on either of the financial statements in making the loans to the DEBTORS, but made the loans based on the DEBTORS' good payment history. Relying on the Loan Narrative that FARM CREDIT prepared in evaluating the November, 2003 financial statement, which was submitted in connection with KIM'S request to obtain a short term loan of $60,000 to purchase feeder cattle, KIM maintains that FARM CREDIT recognized that it was incomplete and inaccurate and that a more complete statement would be necessary in order to renew the operating loan. The Loan Narrative contains the following comments:

>I agree in separating the line for cattle, as Operating note is due 1/1/04 it makes more sense to make short term note now, and set line up with proper analysis, in the next 30 days. Kim has given inventory information, and off

> the top of his head information to give us a working balance sheet, the information should be close, but he was not prepared at this time.
>
> Cash flow, machinery list, accounts payable, and lease schedule needed for proper analysis in 30 days, temporary monies to lay cattle in prior to weather turning to accommodate borrower.
>
> BS info prepared by the client and VP was basically for the purposes of completing crop and cattle inventory amounts to determine operating loan margins, WC amounts, etc. VP completed the full BS info based on prior info and items reported by the client, but both conceded it was prepared rather informally. For this reason, VP and RCO both agreed to limit the maturity date of this new cattle note until a full BS with machinery purchases, land sale, lease amounts, etc. can be fully quantified for traditional analysis purposes.

KIM asserts that FARM CREDIT cannot establish that it relied on the November 13, 2003 financial statement when it made the loans on January 2, 2004 and March 17, 2004, because, as indicated, it had obtained a financial statement in December, 2003. KIM also relies on a second loan narrative prepared by FARM CREDIT after submission of the December, 2003 financial statement, in connection with the renewal of the operating loan. Like the prior narrative, it discloses some concerns regarding the accuracy of the information disclosed by KIM, including the omission of $22,000 in credit card debt and an equipment loan. Summarizing his concerns, Ackers writes:

> I believe there are some reporting issues with this client that make it difficult to track his exact progress from year to year. The fact that the Mother-in-law is making some contributions to the family can throw off the analysis. Also we have seen some items left off of the BS over the past couple of years. In order to get a higher comfort level with our financial analysis in the future, the client needs to do a better job of financial reporting.

The financial statement, dated December 18, 2003, is signed only by KIM. In his affidavit, Garry Ackers characterizes the November, 2003 financial statement as being

updated in December, 2003. He states that there was no material change between the November, 2003 and the December, 2003 financial statement. It remains to be explained by FARM CREDIT at trial, why it relied on the November, 2003 financial statement but not, apparently, the one published one month later in December, 2003.[6]

With regard to the loans made in 2005, KIM asserts that FARM CREDIT could not have relied on the December, 2004 financial statement as a "written representation," since it was not signed until mid-March, 2005, after the loans were made in February, 2005. KIM also questions whether FARM CREDIT relied on the December, 2004 financial statement in making the loans on June 20, 2005 and June 28, 2005, due to the six-month time lapse.

The DEBTORS also contend that FARM CREDIT'S reliance on the financial statements was not reasonable. While actual reliance presents a separate issue from a determination of "reasonable reliance," the analysis is an overlapping one. Evidence that a creditor's reliance was reasonable is circumstantial evidence of actual reliance by the creditor. *Matter of Garman*, 643 F.2d 1252 (7th Cir. 1980). KIM claims that the financial statements and other information FARM CREDIT had available should have raised red flags. The DEBTORS again rely on the comments in the loan narrative prepared in connection with the November, 2003 and December, 2003 financial statements, including annual contributions from MARY'S mother. KIM also claims that FARM CREDIT was aware of the DEBTORS' liability to Colchester State Bank and the State Bank of Augusta at the time the loans were made in February and June of 2005.

---

[6]Generally, a lender that receives several financial statements from a borrower over a relatively short period of time, and makes a series of loans or renewals in reliance thereon, is expected to use and rely on the most recent statement. It would be odd, indeed, if a lender could ignore a more recent statement and rely on an older one when making a loan or renewal. Such a claim will be subject to strict scrutiny at trial. In addition, it is unusual that having obtained a financial statement in November, 2003, FARM CREDIT would seek another one just one month later. Such conduct begs for an explanation.

16

In support of its claim of reasonable reliance on the financial statements, FARM CREDIT asserts that it followed its standard practice and the industry standard when renewing the DEBTORS' loans or extending credit. Garry Ackers, a long-time officer of FARM CREDIT, attests that the loan application and approval procedures were followed in accordance with FARM CREDIT'S customary business practices. According to his affidavit, in making and renewing loans, he required the DEBTORS to describe any material changes in their farming operation from the prior year. A claim of staleness may be cured when the debtor affirms that the information contained in the earlier financial statement continues to be accurate. *In re Robinson*, 192 B.R. 569 (Bankr.N.D.Ala. 1996); *In re Ogden*, 119 B.R. 277 (Bankr.M.D.Fla. 1990). Ackers claims that he was unaware of the outstanding operating loans to other lenders.

On the issue of reasonable reliance, it is abundantly clear that the motions for summary judgment filed by MARY and by KIM and FARM CREDIT'S cross-motion for summary judgment together establish that genuine issues of material fact exist concerning whether FARM CREDIT actually relied on the financial statements in granting the various loans and whether that reliance was reasonable. Summary judgment is inappropriate in this case.

Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###